May it please the Court, my name is Christopher Anders of Immigration Counseling Service, representing the petitioner Yvette Kabuya. Your Honors, this case is about a woman whose country descended into civil war while she was studying here in the United States. Her father was disappeared by the Kabila government as a result of his allegiance to the ousted Mobutu government, and her mother was forced into hiding. It's objectively reasonable for her to fear returning to the Democratic Republic of Congo. The evidence in this record shows that there's a reasonable possibility that she would be harmed on account of a political opinion imputed to her because of her association with her father. Now could you clarify, her father was characterized in one thing I saw as a low-level functionary in his area for the Mobutu government. If she herself was not particularly identified, certainly not formally in any way, then she was out of the country. So what is the evidence of any connection between her and her father such that if she were to go back, she would somehow be labeled or associated at all? There's some evidence in the record that suggests there isn't evidence of targeting family members, it's the participants themselves. So how do you deal with that? Well, first of all, the term that her father was a low-level administrator comes from the asylum officer's assessment to refer. At the removal proceedings, the testimony related more to that her father was a regional party leader. So exactly where that low-level administrator term comes from was sort of left behind in the record produced at the removal proceedings. In answer, really your main question is why would she be associated with him? Number one, because of his prominence. He was a regional leader. Number two, she was an adult when she left the Congo. So her association with him as his daughter, her participation in the family business, would have given her a level of visibility that would lead her to be associated with him. But the cases which have recognized an imputed political opinion due to family connections have, I think, fairly uniformly involved situations in which many members of the family were persecuted. And we don't really have that here, right? We have one. So you would essentially argue that his prominence substitutes for the numbers, is that? Yeah, I would. I mean, to some extent, yes, I would argue that. I mean, he was, I don't, there's no evidence that other members of the family were politically active, granted. But he was a regional level leader, and he was, to me, the BIA's finding that he was, that the petitioner speculated that he was harmed because of his political opinion is not supported in the record. I mean, she heard from her uncle that he was taken by government forces and taken to prison. So it seems that, you know, persecution of him based on his political opinion is clearly established in the record. It's hard to demonstrate that either others of her relatives had his political opinion imputed to her, or more generally, that relatives of high-level leaders of the Mobutu regime were being persecuted, who didn't have any independent political activity of their own. Right. There's no direct evidence in the record of family members of Mobutu supporters being persecuted, but there's ample circumstantial evidence. I mean, the circumstances in 1998, 1999 that the record address show a particularly vicious civil war in which there is a large amount of brutal reprisal against political enemies going in all the different directions, against all, you know, all the opposing factions. So I think that makes it reasonable to, that ample circumstantial evidence makes it reasonable to infer that her fear of return is objectively reasonable. Well, there's a, let me focus on this. There's a country report from the Bureau of Democracy, Human Rights, and Labor Affairs, 1998, that specifically seems to address your client's situation. And it says, we are not aware of family members of former principal figures in the Mobutu administration being mistreated by the government, although many of those figures closest to along with their closest family members, which she would qualify in that certainly, managed to flee Kinshasa prior to the arrival of Kabila's forces. It is possible that principal figures of the Mobutu regime returning to DROC now may have to defend themselves against accusations of corruption, and family members of such principal figures would face the prospect of lower living standards under the new government. Now, that pretty well addresses the argument you're making. So what's the evidence that we look to, to say that the IJ got it wrong? Because that report just doesn't carry any weight, either things have changed or whatever. What's the response to that? I guess the response is what I just brought up, is that this, I mean, there's no direct evidence of a specific family member being harmed. But in the context of the Civil War, it's not unreasonable to think that that harm would occur. Well, that's, well, not unreasonable objectively, or for her to, you're talking about objectively reasonable. Objectively. Mm-hmm. And based on what? It happened, apparently. But there's no evidence that it happened. Right. There's no evidence that it has, there's no direct evidence that it has. Is there any indirect evidence? Pardon me? When you say circumstantial evidence, you're simply saying it could have happened, but you don't have any evidence that, I mean, circumstantial evidence usually has an event happening and then you have a circumstantial evidence about why it happened. But what event happened that we're trying to explain? What the petitioner needs to show is that her fear of return is objectively reasonable. Mm-hmm. So these country, you know, my argument is these country conditions and the extremely intense level of political violence make her fear of return objectively reasonable. Now you said he was a regional party member. What's the, what party was he? He was a regional leader in the MPR, and I apologize, I don't remember what that is. There's an organization called MLC, is that not, that's not the one she's involved in. Or he was involved in. He was involved in a, some sort of parastatal government organization, but the political party was the MPR, which was Mobutu's political party. Well, there's, I'm looking at one of these country reports and it says that some ex-Zahrarian armed forces, FAZ soldiers, and civilians associated with the MLC that individuals arrested and detained in the name of state security frequently will, held without legal charge, presentation of evidence, access to a lawyer, due process. Your Honor, I believe the MLC was the Movement for the Liberation of Congo, which was Kabila's party. That's Kabila's, so that has nothing to do with her then. Correct. She just. Those would be the people she would fear. All right. Right. And just to briefly turn to the, return to your point, Judge Brisson, the, where we're talking about imputation of political opinion to a family member. Excuse me, can I just be, it says the MLC remained dominated by former Mobutu supporters from the Equator province. Okay. So that's why I'm confused, but maybe you can. I'm apparently confused too. All right. Go ahead. I'm sorry, I cut you off. You were answering, Judge Brisson. Oh, just, where we're talking about imputation of political opinion to a family member, number one, you have to look at the, not all the cases uniformly show a number of people being politically active, although that's fairly common. Another important factor is whether a member of, other members of the family have been persecuted, which in this case her father was. Non-political work for a political figure can lead to that imputation too. You know, she was active in her father's business, not in his political activities, but that would, you know, that would strengthen the association with him for all purposes for that imputation. And briefly, the social group argument relies on analyzing her as a family member of a former Mobutu supporter. In a sense that- You don't have evidence that family members of Mobutu supporters were persecuted. That's the problem. She may, let's assume it is a, let's assume that that's a viable social group, but I don't know where Thomas leaves that, but let's leave that aside for now. You need some evidence that this group was a person, the people were, she or someone was persecuted for being a member of that group. Right. I mean, I guess I'd just return to what I said before, that it seems reasonable to fear that persecution, even though there's no direct evidence of it having occurred. You're out of time. Well, if necessary, you can have a minute on rebuttal. Excuse me, may it please the court, my name is Amy Potter and I represent the- Can I begin by asking you where you do think the Supreme Court and Thomas leave the family as a social group question? I think that the family as a social group can still remain an issue when there's some other aspect, in this case the political opinion issue. I think- Well, but the Supreme Court didn't say, I mean, we held that families were a social group. The Supreme Court didn't exactly say no, it's remanded for something or other, it wasn't clear what it was remanding for. So is our holding in Thomas that the family can be a social group still? For purposes of this case and as of now, yes, I believe that family group is still a social group. Right. Yes. I believe it may be a changing area of the law, but at this point I think that it's true. I think that in the record at AR 53 to 54, she identifies the group her father was a part of, the PR, and that was the political group he was a part of. I think in this case, the substantial evidence supports the BIA and IJ's decision that the petitioner failed to prove that she had a well-founded fear of persecution based on imputed political opinion. There is no evidence in the record that family members of supporters of the Mobutu regime have been targeted for persecution. As the court noted, and at AR 92, the report reflects that, in fact, there's no evidence at all that family members of Mobutu supporters have been persecuted. And indeed, in this case, we have the petitioner's mother and her uncle still living in the country with no evidence that either of them have been persecuted for that political opinion. I think there's a flat-out mistake in the BIA opinion, which says that her mother told her that it was safe for the respondent to join her in Kindu, and in fact, the record says the opposite. The mother said it wasn't safe. I believe her mother says it's unsafe in the Congo generally. I don't think that her mother said it was unsafe because of the support of the Mobutu regime. But that's not what I'm asking you. The BIA said that her mother told her it was safe for the respondent to join her in Kindu. That's not true, is it? No, I do not. I don't know where that came from in the BIA. So what do we do with that? That was part of the basis for the BIA opinion, and it's just wrong. I think that's part of the basis for the BIA's opinion that she can return to a portion of the Congo. But to even get to that decision, she has to show that she has a reasonable fear of persecution, and she's not met that standard. She has not shown that family members of supporters of the Mobutu regime are subject to persecution. There is evidence in the record of general strife in the Congo, but her claim was that she would be persecuted based on this imputed political opinion, not just general strife in the Congo. So in order to get to the point of determining whether she can relocate, she has to have met the burden of showing that there's some persecution, and she hasn't done that. And I think that that's the key here, is that her claim is that she is persecuted based on being a family member of a Mobutu supporter, and she's failed to do that. And there's no evidence in the record. I think the general evidence in the record of civil strife in the Congo is not circumstantial evidence of persecution on this particular identified ground. And so by failing to do that, she's failed to show an objectively reasonable fear of future persecution. She needs to show specific concrete facts, and she's failed to do so here. Again, we have her father has, was involved in the Mobutu regime. It appears that he had some high-level position, but her link to him is very limited in terms of her, she has no support of the Mobutu regime. Her link to him is that, I mean, obviously she's his daughter, but in terms of the political But that limited involvement, and the fact that she had no political involvement, simply doesn't support her argument that she's subject to persecution. And again, her family continues to live there, her mother and her uncle, and while her mother may have said that the country was not safe, they've not been persecuted based on this political opinion. And I believe the law in the Ninth Circuit is that that can be considered in terms of objective reasonable fear of future persecution. And while her mother may not feel generally safe, because her mother and uncle are still living in the Congo, and she has failed to show that she will be persecuted on the imputed political ground, I believe she can relocate into the Congo. If the court has any further questions, I'm happy to answer them. No, I think we're fine, thank you. You're correct in saying that the BIA statement that her mother said it was safe is a misstatement of the record. Her mother, in fact. I suppose, so if that's a misstatement, and suppose we also, the next sentence is, while the respondent speculates that her father was targeted on account of a protected ground, she provides no basis for this, and as you suggested earlier, that may be wrong as well. Supposed we thought those two things were wrong, would those be a basis for overturning the determination? I think they would, because, number one, that her father was subjected to persecution on a protected ground strengthens the argument that she would similarly be subjected to persecution on a protected ground, and secondly, her mother's going into hiding strengthens the connection to persecution of family members. Additionally, it rebutts any ability to find that internal relocation is reasonable. But the next sentence is, nor does she provide any evidence that family members of those with ties to the Mobutu government have been targeted for them, and that seems to be true. And why isn't that enough reason to uphold the BIA? Because there's, number one, her mother was forced into hiding. Her mother's a family member. She evidently felt scared enough to go into hiding. Number two, there's ample evidence in the record of civil war and political violence. So that's the, just to briefly touch on the internal relocation point, because the feared persecution is at the hands of the government, the burdens on the US government to show that internal relocation's reasonable under all the circumstances, in the context of a civil war that the record shows has killed approximately 3 million people, that does not seem reasonable under all the circumstances. Thank you, Your Honors. Thank you. Thank you both for your argument. The case argued is submitted. Thank you.
judges: Leavy, Fisher, Berzon